**UNITED STATES of America,**

v.

**John B. STEWART, Defendant.**

**No. CRIM.01–062–P–C.**

United States District Court,
D. Maine.

Jan. 18, 2002.

98

Bruce M. Merrill, Esq., Portland, ME, Philip S. Cohen, Esq., Waldoboro, ME, for John B Stewart.

Jonathan R. Chapman, Evan Roth, Esq., Office of the U.S. Attorney, Portland, ME, for U.S.

## MEMORANDUM OF DECISION AND ORDER ON DEFENSE COUNSEL'S MOTION TO WITHDRAW

GENE CARTER, District Judge.

### I. FACTS

Before the Court for action, after hearing had on January 17, 2002, is the motion of retained defense counsel to be allowed to withdraw because Defendant has not performed the latter part of his fee agreement with counsel[1] (Docket No. 20). At the hearing, retained counsel advised the Court, in response to the Court's questions, that his fee arrangement with Defendant required payment of a retainer of $25,000 to cover counsel's services through to the commencement of trial, which sum has been previously paid to counsel by Defendant. The agreement requires an additional $25,000 payment to cover counsel's services at trial.

This case has a short history. The docket consists of twenty filings over the period from July 13, 2001, to January 14, 2002, including the present motion. Only six of these filings were prepared by this retained counsel. Defendant was represented through the first six filings by other counsel.[2] Entry six is that counsel's Motion to Withdraw, reciting that present counsel has been retained.

Since his entry into the case as of late July 2001, retained counsel has filed only three filings of substance requiring any significant level of legal expertise: an omnibus motion and supporting memorandum (Docket No. 9), an after-hearing brief in support of the motion to suppress evidence (Docket No. 16), and a reply memorandum to the Government's Post–Hearing Brief on the motion to suppress (Docket No. 19), the latter being in letter format. Counsel attended two sessions of a hearing on the motion to suppress evidence, held on September 28 and October 24, 2001. The first session lasted for four hours and forty-five minutes and the second for one hour and fifty-five minutes, for a total of approximately six hours and forty minutes for both sessions combined.

The Court's careful review of the omnibus motion and supporting memorandum (Docket No. 9) is conducive to the belief that its preparation was a cursory task requiring a minimal involvement of counsel's time. The motion makes routine requests for immediate production of *Brady* and *Giglio* material,[3] a request for an *in limine* hearing prior to trial to resolve unspecified evidentiary issues,[4] a request that the Government preserve and produce all rough notes made during the investiga-

---

1. Defendant has advised the Court that he has no objection to counsel being allowed to withdraw but that he will then require court-appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A(a)(1), to complete the defense of the case at the expense of the government. The Court has made inquiry of Defendant with respect to his indigency and it appears that he may be qualified for CJA counsel as a result of pending forfeiture proceedings related to significant assets as a result of the offense conduct. Retained counsel has advised the Court that he is not willing to accept appointment under the CJA. Defendant has never expressed any discontent with retained counsel or his representation.

2. The record does not indicate whether this counsel was retained or court-appointed. He never formally appeared as counsel in the case except by filing of his Motion to Withdraw as counsel (Docket No. 6).

3. This request was denied on the papers by endorsement of September 28, 2001, on the Government's representation that it would comply in due course with its obligations to provide such materials. This is the routine disposition of such requests in this district and required no argumentation.

4. Decision thereon was reserved to the time of trial by endorsement of September 28,

tion of the Defendant,[5] a request that the Government produce personnel files of officers to be called as witnesses,[6] a request that Defendant be able to supplement his pretrial motions on receipt of discovery,[7] a request that Defendant be permitted to file an over-length brief,[8] and a motion to suppress Defendant's post-arrest statements to police officers because of an asserted *Miranda* violation.[9] In addition, the motion sought a *Franks* hearing in conjunction with a motion to suppress evidence, also contained therein. Only the latter two motions required any activity by defense counsel after filing.

The supporting memorandum consists of thirty-one pages of text, apparently prepared by counsel, and thirty-five pages of exhibits consisting mostly of documents generated by law officers in the course of obtaining the two search warrants in question in this case and carrying out their execution. The memorandum's text consists of six pages of factual presentation and a brief argument on Defendant's claims for a *Franks* hearing and fourteen similar pages devoted to Defendant's positions on the motion to suppress. The legal argumentation in both these sections is cursory and consists mostly of citation to landmark cases in the area of search and seizure law. The remainder of the memo-

randum (eleven pages) consists of a cursory presentation of the remaining requests made in the motion. These are brief, mostly boilerplate, recitals of Defendant's demands and perfunctory statements of the basis therefor, setting forth no legal analysis or argumentation of significance. It would be generous to believe that experienced counsel would require more than six hours to generate and file this compendium of demands that are (except for the suppression motion) routine in nature.

Defendant's post-hearing brief consists of twenty-two pages: thirteen pages of factual exposition on the evidence produced at the hearing and six pages of legal exposition of the elemental legal framework for resolving questions of suppression of evidence. Defendant's reply to the Government's brief is three pages, in letter form, setting forth brief comments on several aspects of the Government's written argument on the suppression motion and containing only two brief paragraphs of legal argument, citing *Franks* and two other cases.

## II. DISCUSSION

■ First of all, it is premature for counsel to withdraw under the specific terms of his alleged fee agreement with Defendant.[10] The second $25,000 payment

---

2001, as is the routine practice as to such motions where no specific evidentiary issue is identified in the motion itself.

5. The request was dismissed on the papers by endorsement of September 28, 2001, on the Government's assertion that it would preserve the subject notes and produce them as required.

6. Decision was reserved by endorsement of September 28, 2001, to the time of trial, a routine disposition in this district.

7. The request was denied without prejudice to reassertion for cause by endorsement of the Magistrate Judge on August 7, 2001.

8. The request was granted by endorsement of the Magistrate Judge on August 7, 2001.

9. This motion was withdrawn by Defendant in his reply to the Government's Post–Hearing Brief (Docket No. 19) at 1, n. 1.

10. Defense counsel has alleged in the motion:
    2. Counsel has reminded Mr. Stewart on several occasions of his financial obligations under the terms of the Agreement. Most recently, counsel advised Mr. Stewart that if the agreed-upon fee was not paid by December 18, 2001, counsel would be filing a Motion to Withdraw, with the Defendant joining in, as provided for in the said Retainer Agreement.

is due, as defense counsel has represented his agreement with Defendant, when the matter proceeds to trial. Counsel conceded at the hearing that the first $25,000 payment was to carry Defendant through any proceedings in respect to a possible guilty plea and sentencing. These potential stages of the case have not yet been reached.

■ Secondly, counsel has not persuaded the Court that there is reason to permit him to withdraw. In view of the size of the retainer he has received and the Court's assessment of the value, by reasonable standards of compensation of the services he has provided to date, an anticipated failure of Defendant to pay the second fee payment will occasion no unfair hardship on counsel. There is in this circumstance nothing to justify throwing the economic burden of Defendant's defense onto the public fisc.

■ Finally, it is not the Court's purpose or function to attempt to regulate the conduct of private individuals or counsel in negotiating fee agreements. However, it is to be presumed that counsel is equipped to judge with reasonable accuracy what a satisfactory fee requirement should be in a particular case and to make self-serving judgments as to the credit terms to be extended to clients. Once counsel has done so, if he subsequently learns he has

erred in judgment with respect to the credit terms, it likewise should not be the function of the court to relieve him of the burden of his erroneous judgment when to do so will likely disrupt the efficiencies of the judicial process. This matter is in order to proceed to trial on the Court's next trial list, and the injection of new defense counsel into the case at this point must significantly delay trial. This Defendant has now been detained for over six months. He has a right to a speedy trial. That may not be defeated by any inefficiency of process of the Court and, much less, should a speedy resolution of the case consistent with that right be subject to delay to accommodate retained counsel's collection efforts.

■ Counsel has not shown any convincing reason why the delay and disruption and the resulting expenditure of public money that will result from the injection of new counsel into this case should be suffered in order to indulge counsel's relief from a fee arrangement that has not worked to his satisfaction.[11]

### III. CONCLUSION

The Court **CONCLUDES** that the part of the fee agreement that Defendant has performed provides adequate compensation to counsel for a case of this nature.

---

3. Mr. Stewart has not complied with the agreed-upon terms ˙of the Retainer Agreement.
Motion to Withdraw (Docket No. 20) at 1, ¶¶ 2–3.
There is no assertion that Defendant has refused to fully perform the fee agreement, though the Court understands there is some question as to his ability to do so.

11. The fact of a fee dispute between defense counsel and his client does not, by itself, create any conflict of interest on the part of counsel. *United States v. O'Neil,* 118 F.3d 65,

71 (2nd Cir.1997) ("There is little question that a defendant's failure to pay fees may cause some divisiveness between an attorney and client, but we presume that counsel will continue to execute his professional and ethical duty to zealously represent his client, notwithstanding the fee dispute."); *United States v. DiCarlo,* 575 F.2d 952, 957 (1st Cir.1978) ("[T]he presumption [is] that the lawyer will subordinate his pecuniary interests and honor his primary professional responsibility to his client in the matter at hand."). *See also Caderno v. United States,* 256 F.3d 1213 (11th Cir.2001).

The motion is hereby **DENIED.**

So **ORDERED.**